UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLE DANIEL, | Case No.  25-cv-10994-JSC |
| Plaintiff, | |
| v. | **ORDER RE: MOTION TO COMPEL ARBITRATION** |
| FAIRWAY INDEPENDENT MORTGAGE CORPORATION, | Re: Dkt. No. 17 |
| Defendant. | |

Nichole Daniel ("Plaintiff") brings this putative class action against Fairway Independent Mortgage Corporation ("Fairway") for violations of California labor and business laws.  (Dkt. No. 1-1.)  Now pending before the Court is Fairway's motion to compel arbitration or, in the alternative, for limited discovery prior to resolving the motion to compel arbitration.  (Dkt. No. 15.)  After carefully considering the parties' written submissions, the Court concludes oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the April 23, 2026 hearing, and GRANTS Fairway's motion to compel arbitration.

## BACKGROUND

### A.    Complaint Allegations

Plaintiff worked for Fairway from approximately April 2021 through approximately July 2022 as a Loan Officer Assistant.  (Dkt. No. 1-1 ¶ 20.)  Plaintiff worked "off-the-clock" prior to clocking in or after clocking out for her shifts and therefore was not paid minimum wage for all hours worked.  (*Id.* ¶ 34.)  Fairway also failed to provide Plaintiff overtime compensation, meal breaks, and rest breaks as required by California law.  (*Id.* ¶¶ 40-44, 49-55, 59-66.)  Fairway did not pay Plaintiff in a timely manner, and did not provide Plaintiff complete and accurate wage statements.  (*Id.* ¶¶ 68-72, 75-78.)  Finally, Fairway did not provide Plaintiff with final wages in a

timely manner and failed to reimburse Plaintiff for necessary business expenditures.  (*Id.* ¶¶ 81-83, 86-87.)

### B. Relevant Facts Re: Arbitration Agreement

Plaintiff began employment with Fairway on April 5, 2021.  (Dkt. No. 16 ¶ 6.)  Fairway's IT department creates an account for each new employee, consisting of a unique company email address, username, and password.  (*Id.* ¶ 9.)  The credentials are shared with the new employee's manager, who is directed to share them with the employee.  (*Id.*)  Fairway prohibits managers from sharing an employee's credentials with anyone other than the employee, or from using them in any fashion.  (*Id.*)

On April 5, 2021, an email was sent to Plaintiff's company email instructing her to complete a set of onboarding tasks.  (*Id.* ¶ 12.)  As part of onboarding, new employees are prompted to review and sign a series of documents, including the Arbitration Agreement.  (*Id.* ¶¶ 13-14.)  A user logged in with Plaintiff's credentials and signed the Arbitration Agreement at 10:39 am on April 5, 2021.  (*Id.* ¶ 19.)  During the same session, the user also input Plaintiff's personal information, including her contact information, address, phone number, and completed I-9 and W-4 tax forms with Plaintiff's information.  (*Id.* ¶ 20.)  The Arbitration Agreement states in relevant part:

> Except as provided below, both the Company and Employee ( on behalf of Employee as well as Employee's heirs, spouse, successors, assigns, and agents) agree all legal disputes and claims between them shall be determined exclusively by final and binding arbitration under the Federal Arbitration Act before a single, neutral arbitrator as described in this Agreement. Except as provided below, claims subject to this Agreement include, without limitation, all claims pertaining to Employee's employment or other relationship with the Company (including application for or termination of employment) and all claims for discrimination, harassment, or retaliation; wages, overtime, benefits, or other compensation; breach of any express or implied contract; violation of public policy; negligence or other tort claims including, without limitation, defamation, fraud, and infliction of emotional distress; and violation of any federal, state, or local law, statute, regulation, or ordinance. Except as provided below, Employee and the Company voluntarily waive all rights to trial in court before a judge or jury on all claims covered by this Agreement. Claims against the Company subject to this Agreement include claims against the Company's parents, subsidiaries, affiliates, divisions, brands, alleged agents, and alleged joint or co-employers, and their respective directors, officers, employees, and agents, whether current, former, or future.

United States District Court
Northern District of California

(Dkt. No. 15-5 at 5 ¶ 1.)  Plaintiff attests she does not remember being asked to sign the Arbitration Agreement.  (Dkt. No. 22-11 ¶ 6.)

**DISCUSSION**

### A.  Legal Standard

The Federal Arbitration Act ("FAA") provides arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Under the FAA, "arbitration agreements [are] on an equal footing with other contracts," and therefore courts must "enforce them according to their terms."  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted).  In resolving a motion to compel arbitration under the FAA, a court's inquiry is limited to two "gateway" issues: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (quotation marks and citations omitted).  "If both conditions are met, the FAA requires the court to enforce the arbitration agreement in accordance with its terms."  *Id.* (cleaned up).  Plaintiff does not dispute that the FAA governs or that the Arbitration Agreement encompasses the dispute at issue.

### B.  Existence of an Arbitration Agreement

The existence of an arbitration agreement is a question for the court, not an arbitrator.  *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564-65 (9th Cir. 2014).  As the party seeking to compel arbitration, Fairway "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence."  *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023).  When "the making of the arbitration agreement" is at issue, the summary judgment standard applies.  *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (quoting 9 U.S.C. § 4).  To prevail under the summary judgment standard, the party seeking to compel arbitration must show there is no genuine issue as to any material fact regarding formation of the arbitration contract.  *See Hansen*, 1 F.4th at 670; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Conversely, to deny the motion to compel arbitration, rather than hold a trial on arbitration agreement formation, a court must find no reasonable trier of fact could find an

United States District Court
Northern District of California

3

agreement was made. *See Hansen*, 1 F.4th at 672 ("[O]nce a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved."). In evaluating the record, the court must "give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023).

"State contract law controls whether the parties have agreed to arbitrate." *Knutson*, 771 F.3d at 565 (citation omitted). Under California law, the "vital elements of a cause of action based on contract are mutual assent (usually accomplished through the medium of an offer and acceptance) and consideration." *Aton Ctr., Inc. v. United Healthcare Ins. Co.*, 93 Cal. App. 5th 1214, 1231 (2023) (quotation marks and citation omitted). To put it another way, "there must be actual or constructive notice" of the contract offer "and the parties must manifest mutual assent." *Oberstein*, 60 F.4th at 512-13.

Applying the summary judgment standard, there is no genuine dispute of material fact Plaintiff manifested assent to the Arbitration Agreement. Fairway produced the Arbitration Agreement with Plaintiff's signature, dated April 5, 2021. (Dkt. No. 15-5 at 7.) Fairway also provided ample evidence only Plaintiff could have signed the Agreement. (Dkt. No. 16 ¶¶ 9-16.) Plaintiff offers no evidence she did not sign the Arbitration Agreement; she only contends she does not remember being asked to sign Arbitration Agreement. (Dkt. No. 22-11 ¶ 6.) But Plaintiff's testimony she does not remember being asked to sign the Arbitration Agreement does not dispute the evidence she signed the Arbitration Agreement. *See Blanford v. Sacramento Cnty.*, 406 F.3d 1110, 1113 n.3 (9th Cir. 2005) (finding a plaintiff's testimony he did not remember his actions was "not sufficient to allow a reasonable jury to conclude that [he] did not do these things," and the district court properly accepted the defendant's characterization of plaintiff's actions as true); *see also Hall v. FedEx Freight, Inc.*, No. 1:13-CV-01711-SKO, 2014 WL 3401386, at *7 (E.D. Cal. July 11, 2014) (finding the plaintiffs failed to materially dispute they signed an employment application containing a contractual provision when the plaintiffs offered

no evidence they did not sign the employment application and contended only that they did not remember completing the application).

So, Fairway has met its burden to establish there is no genuine issue of material fact regarding Plaintiff's assent to the Arbitration Agreement.

### C.    Delegation

Gateway questions of arbitrability are typically for a court to decide, even when there is a facial agreement to arbitrate. *See Portland GE v. Liberty Mut. Ins. Co*., 862 F.3d 981, 985 (9th Cir. 2017). Gateway questions include "whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy." *Id.* (internal quotation marks and citation omitted). However, "parties may delegate the adjudication of gateway issues if they 'clearly and unmistakably' agree to do so." *Id.*; *see also Rent-A-Ctr.,* 561 U.S. at 68–69 ("parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" through a delegation clause) (internal citation omitted). "[L]anguage delegating to the arbitrators the authority to determine the validity or application of any of the provisions of the arbitration clause[ ] constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (citing *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (quoting *Rent-A-Ctr.*, 561 U.S. at 68)).

The Arbitration Agreement includes the following delegation clause:

> Except as noted in the following paragraph, the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, and interpretation of this Agreement, including, without limitation, any claim that it is void or voidable. Thus, except as noted in the following paragraph, the parties voluntarily waive the right to have a court determine the enforceability of this Agreement.

(Dkt. No. 15-5 at 6 ¶ 6.) This delegation clause "clearly and unmistakably" delegates the gateway questions of arbitrability, enforceability, and voidability to the arbitrator, which includes unconscionability. *See Portland*., 862 F.3d at 985; *see also Singh v. Adobe Inc.*, 797 F. Supp. 3d 1038, 1051 (N.D. Cal. 2025) (finding "the delegation clause clearly and unmistakably delegates

5

United States District Court
Northern District of California

the gateway question of arbitrability to the arbitrator in the first instance" when the delegation clause stated the arbitrator had "the exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability of the Terms or the formation of the Terms, including whether any dispute between us is subject to arbitration […] and whether all or any part of these Terms are void or voidable").

While a party can challenge a delegation clause on unconscionability grounds, "the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009-10 (9th Cir. 2023).  Here, Plaintiff does not even mention the delegation clause in her opposition brief, and thus has not challenged the delegation clause on unconscionability grounds.  *See Rent-A-Center*, 561 U.S. at 72-73 (concluding the plaintiff had not sufficiently challenged the delegation provision when he only argued "the arbitration agreement as a whole [was] substantively unconscionable," and "did [not] even mention the delegation provision" in his opposition brief).  As noted below, in arguing the Arbitration Agreement as a whole is unconscionable, Plaintiff insists the following paragraph, which contains a waiver of all class, collective, and representative claims, is substantively unconscionable.  (Dkt. No. 15-5 at 6 ¶ 7 ("Waiver").)  The Waiver is a separate provision of the Arbitration Agreement and Plaintiff's challenge to the Waiver is not imputed to the delegation clause.  *See Coats v. TTX Co.*, EDCV 23-2405-MWF (SPx), 2024 WL 1118997, at *1-2 (C.D. Cal. Feb. 27, 2024) (describing a delegation clause and waiver of class, collective, and representative actions as separate provisions).

Because Plaintiff does not challenge the delegation clause and the delegation clause clearly and unmistakably delegates the gateway question of arbitrability to the arbitrator in the first instance, an arbitrator, not the Court, must resolve Plaintiff's unconscionability arguments. Therefore, the Court GRANTS Fairway's motion to compel arbitration.

### D.    Class Claims

In addition to moving to compel arbitration of Plaintiff's individual claims, Fairway asks the Court to dismiss Plaintiff's class claims.  (Dkt. No. 17 at 15.)  The Arbitration Agreement's delegation clause clearly and unmistakably delegates all gateway questions, including those of

6

United States District Court
Northern District of California

enforceability, to the arbitrator "except as noted in the following paragraph [referring to the Waiver]." (*Id.* ¶ 6.) The Waiver states:

> **The arbitrator is prohibited from consolidating the claims of others into one proceeding, to the maximum extent permitted by law. This means an arbitrator shall hear only individual claims and is prohibited from fashioning a proceeding as a class, collective, representative, joint, or group action or awarding relief to a group of claimants or employees in one proceeding, to the maximum extent permitted by law**. *Any question or dispute concerning the scope or validity of this paragraph shall be decided by a court of competent jurisdiction and not the arbitrator.*

(Dkt. No. 15-5 at 6 ¶ 7 (bold in original) (italics emphasis added).) So, notwithstanding the delegation clause, the Arbitration Agreement requires the Court to decide the validity of the Waiver.

Plaintiff insists the Arbitration Agreement as a whole is unconscionable because, among other reasons, the Waiver does not carve out, and therefore impermissibly waives, representative PAGA claims. (Dkt. No. 22 at 17-18 (citing *Piplack v. In-N-Out Burgers*, 88 Cal. App. 5th 1281, 1288 (2023); *DeMarinis v. Heritage Bank of Commerce*, 98 Cal. App. 5th 776, 788-89 (2023)).) "[W]here […] an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law." *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 384 (2014), *overruled on other grounds by Quach v. California Com. Club, Inc.*, 16 Cal. 5th 562 (2024), and *abrogated on other grounds by Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022). "[A]rbitration agreements that require arbitration (or waiver) of the representative portion of a PAGA claim are not enforceable." *Piplack*, 88 Cal. App. 5th at 1281. But if an arbitration agreement also includes a severability clause, "any 'portion' of the waiver that remains valid must still be 'enforced in arbitration.'" *Viking*, 596 U.S. at 662. In *Viking*, the arbitration agreement contained both a severance clause and a waiver of class, collective, and representative PAGA claims. *Id.* at 647. Because the arbitration agreement could not compel waiver of representative PAGA claims, the arbitration agreement was not enforceable as a wholesale waiver of the plaintiff's PAGA claims. *Id.* at 662. But, because of the severability clause, the arbitration agreement remained enforceable to compel arbitration of the plaintiff's individual PAGA claims. *Id.*; *see also Piplack*, 88 Cal. App. 5th at

United States District Court
Northern District of California

1281 (finding an arbitration agreement containing a severance clause and a PAGA waiver was enforceable for individual PAGA claims but not for representative PAGA claims) (citing *Viking*, 596 U.S. 639).

Like the arbitration agreement in *Viking*, the Arbitration Agreement contains a Waiver and a severability clause. (Dkt. No. 15-5 at 6 ¶ 7; *id.* at 7 ¶ 9.) The Waiver prohibits arbitration of "class, collective, representative, joint, or group action or awarding relief to a group of claimants or employees in one proceeding, to the maximum extent prohibited by law," and does not carve out representative PAGA claims. (*Id.* at 6 ¶ 7.) The severability clause states "[i]f any provision of this Agreement is deemed invalid or unenforceable, such provision shall be modified automatically to the minimum extent necessary to render this Agreement valid and enforceable." (*Id.* at 7 ¶ 9.) Therefore, the Waiver is unenforceable insofar as it waives representative PAGA claims, but remains otherwise enforceable, including as to Plaintiff's class claims. Arbitration agreements with waivers of class, representative, group, or class actions "must be enforced as written." *Epic Sys. Corp. v. Lewis,* 584 U.S. 297, 525 (2018).

So, the Court GRANTS Fairway's motion to dismiss Plaintiff's class claims. *See BHS L. LLP v. BMO Bank N.A.*, No. 25-CV-10368-NC, 2026 WL 381814, at *8 (N.D. Cal. Feb. 11, 2026) (enforcing waiver of class claims).

## CONCLUSION

For the reasons explained above, the Court GRANTS Fairway's motion to compel arbitration of Plaintiff's individual claims, dismisses the putative class claims, and stays Plaintiff's individual claims pending arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (requiring a stay pending arbitration when a party requests a stay). The parties shall jointly file an update on the status of arbitration by April 21, 2027.

This Order disposes of Docket No. 17.

**IT IS SO ORDERED.**

Dated: April 20, 2026

*Jacqueline Scott Corley*

JACQUELINE SCOTT CORLEY
United States District Judge

8